Robert WYLES *v.* STATE of Arkansas

CR 03-796 182 S.W.3d 142

Supreme Court of Arkansas
Opinion delivered May 27, 2004

*William M. Pearson*, for appellant.

*Mike Beebe*, Att'y Gen., by: *Clayton K. Hodges*, Ass't Att'y Gen., for appellee.

ANNABELLE CLINTON IMBER, Justice. Appellant Robert Wyles was convicted of first-degree murder and sentenced to life imprisonment. On appeal, Mr. Wyles asserts that the circuit court erred in refusing his proffered instructions on second-degree murder and manslaughter. He also challenges four evidentiary rulings by the circuit court and claims his Sixth Amendment right to counsel was violated when the trial court appointed new counsel after determining that his original counsel had a conflict of interest. We hold that the circuit court erred in refusing Mr. Wyles's proffered instructions and reverse his conviction.

The facts as developed at trial are as follows. On October 13, 2001, Kenneth Matthews visited his married daughter, Lisa Wyles, at her home in Dover, Arkansas. About that time, Lisa had been having an on-and-off extramarital affair with Jason Crow. On October 30, 2001, Mr. Matthews attempted to call Lisa at her home in Dover, but was told by his son-in-law, Robert Wyles, that she had gone to northern Arkansas to be with her paramour, Mr. Crow.

Trisha Wyles, the Wyleses' daughter, testified that she last saw her mother on October 25, 2001. On that day, Mr. Wyles explained to Trisha that he was having an affair with another woman named Carolyn Carpenter. There was some discussion indicating that Trisha's parents intended to separate. Later that day, however, Trisha saw her parents walking down the road holding hands. The Wyleses told Trisha they had worked things out and

then took her to a friend's house in Benton where she planned to spend a couple of days. When Mr. Wyles returned to Benton to pick up Trisha, he was accompanied by Ms. Carpenter, not his wife. Trisha asked her dad to come back for her at another time, but without Ms. Carpenter. Mr. Wyles agreed to return, and told Trisha that he had dropped her mother off at Wal-Mart in Conway so she could meet Mr. Crow.

About two months later, in January, 2002, Mr. Matthews lodged a missing person's report with the Dover Police Department. An officer with the Arkansas State Police Criminal Investigation Division began working on the missing person report, and the investigation eventually developed Mr. Wyles as a suspect. In March, 2002, following the issuance and execution of a search warrant at Mr. Wyles's home in Dover, law enforcement officers found a body buried in the backyard beneath a large barrel. The body was released to the Arkansas State Crime Laboratory, where Dr. Charles Paul Kokes performed an autopsy. Because the body had undergone some decomposition, the medical examiner's ability to detect or rule out certain types of abnormalities was limited; that is, the decomposition process obscured or covered up certain findings that the medical examiner might otherwise have been able to see, or not see, had the body been better preserved. Through an odontilogical exam, the victim was identified as Lisa Wyles. Dr. Kokes determined that Lisa suffered from blunt force trauma to the torso area and explained that he could not rule out strangulation as a contributing cause of death. Dr. Kokes also explained that the blunt force trauma was consistent with a struggle between two people, in which one has the other in a headlock, and then they fall, striking a hard, secondary object. He added that the injury was consistent with a person using more force than he intended to use.

On March 12, 2002, the State filed a criminal information charging Robert Wyles with first-degree murder. At trial, the appellant's oldest son, Scott Wyles, was called as a witness for the State to testify about a conversation he had with his father after the body was discovered. Scott asked his father why he killed Lisa. According to Scott, Mr. Wyles told him that he and his wife were arguing and fighting, and when Lisa began to hit him and threaten to kill him "he grabbed her by the neck and got her in the choke hold." On cross-examination by defense counsel, Scott confirmed that his father said he put his arms around Lisa's neck and just did not let go.

## I. Lesser-Included Jury Instructions

At the close of all the evidence, the circuit court and counsel conferred about jury instructions. Mr. Wyles sought instructions on second-degree murder and manslaughter. The circuit court did not completely deny Mr. Wyles's entire request for lesser-included instructions; instead, the court gave lesser-included instructions on second-degree murder and manslaughter, but refused to instruct the jury on alternative grounds for those lesser-included offenses.

■ No right has been more zealously protected by this court than the right of an accused to have the jury instructed on lesser-included offenses. *Brown v. State,* 347 Ark. 44, 60 S.W.3d 422 (2001). We have often stated that it is reversible error to refuse to give an instruction on a lesser-included offense when the instruction is supported by even the slightest evidence. *Harshaw v. State,* 344 Ark. 129, 39 S.W.3d 753 (2001). Thus, we will affirm a trial court's decision to exclude an instruction on a lesser-included offense only if there is no rational basis for giving the instruction. *Id.*

The State argues that because the jury was instructed on one theory of second-degree murder and one theory of manslaughter, the test for reversible error in the rejection of additional instructions on those offenses is not the slightest-evidence standard, but rather whether the omission infected the entire trial such that the resulting conviction violates due process. *Branstetter v. State,* 346 Ark. 62, 57 S.W.3d 105 (2001) (holding no rational basis for requested instructions). In accord with *Branstetter,* we have held that it is reversible error to refuse to give an instruction on a lesser-included offense when the instruction is supported by even the slightest evidence. *McCoy v. State,* 347 Ark. 913, 69 S.W.3d 430 (2002). Thus, we do not agree that a different standard for instructing the jury on lesser-included offenses is applicable in this case.

### Second-degree Murder Instruction

Mr. Wyles was charged by a criminal information alleging that "[k]nowingly, wilfully and unlawfully, with the purpose of causing the death of another person, he caused the death of another person." According to the information, Mr. Wyles was charged with first-degree murder pursuant to Ark. Code Ann. § 5-10-102. In Arkansas, a person commits murder in the first-degree if "[w]ith a purpose of causing the death of another person, he causes the

death of another person . . . ." Ark. Code Ann. § 5-10-102(a)(2) (Repl. 1997). At trial, the court instructed the jury consistent with first-degree murder under section 5-10-102(a)(2).

Mr. Wyles requested that the jury also be instructed on second-degree murder. The Arkansas Criminal Code states:

> (a) A person commits murder in the second-degree if:
>
> (1) He knowingly causes the death of another person under circumstances manifesting extreme indifference to the value of human life; or
>
> (2) With the purpose of causing serious physical injury to another person, he causes the death of any person.

Ark. Code Ann. § 5-10-103(a) (Repl. 1997). The court instructed the jury pursuant to Ark. Code Ann. § 5-10-103(a)(2), but refused the instruction proffered by Mr. Wyles pursuant to Ark. Code Ann. § 5-10-103(a)(1).

During argument at the bench, the State made a two-prong attack on the requested second-degree murder instruction. First, the State asserted that second-degree murder under subsection 103(a)(1) was not a lesser-included offense to first-degree murder under subsection 102(a)(2) because the "manifesting extreme indifference to the value of human life" language in the second-degree murder statute added an element not included in first-degree murder. The State also maintained that there was no rational basis to support the instruction.

In *McCoy v. State, supra,* this court held that second-degree murder based on a defendant knowingly causing the death of another person under circumstances manifesting extreme indifference to the value of human life (subsection 103(a)(1)) is a lesser-included offense of first-degree murder based upon the defendant causing the death of another person with a purpose of causing the death of another person (subsection 102(a)(2)). Thus, the State's first argument is without merit.

Nonetheless, the State cites us to *Love v. State,* 281 Ark. 379, 664 S.W.2d 457 (1984) and *Lipscomb v. State,* 271 Ark. 337, 609 S.W.2d 15 (1980) for the proposition that when an instruction given by the circuit court adequately states the law, further instruction is unnecessary. Neither of those cases involves a circuit

court's refusal to instruct on a lesser-included offense. Indeed, in *Bradley v. State*, 320 Ark. 100, 896 S.W.2d 425 (1995), we held that a requested second-degree murder instruction was incomplete and erroneous where it only included knowingly causing the death of another person under subsection 103(a)(1) but omitted, as a basis for second-degree murder, purposely causing serious physical injury that results in death under subsection 103(a)(2). We went on to explain that the critical inquiry became whether there was a rational basis to warrant giving a jury instruction that allowed a finding that the defendant, "with the purpose of causing serious physical injury to another person . . . cause[d] the death of any person." *Id.* (citing Ark. Code Ann. § 5-10-103(a)(2)). Because there was a rational basis for such a finding and because the appellant's proffered instruction omitted that part of the definition of second-degree murder, we affirmed the trial court's refusal to give an incomplete instruction.

Likewise, the critical inquiry in the instant matter is whether there was a rational basis in the evidence to warrant giving an instruction that allowed the jury to find that Mr. Wyles "knowingly cause[d] the death of another person under circumstances manifesting extreme indifference to the value of human life." Ark. Code Ann. § 5-10-103(a)(1). If there was some evidence to show that Mr. Wyles acted under circumstances manifesting an extreme indifference to the value of human life, then it was error to refuse the appellant's proffered instruction on this alternative basis for second-degree murder.

Here, there is evidence that Mr. Wyles got into an argument with his wife that escalated into physical violence. When Lisa began hitting him and threatening to kill him, Mr. Wyles reacted by putting her in a headlock, or possibly choking her, or putting his arms around her neck, and he did not let go until she died. Based on this evidence, the jury could have found that Mr. Wyles assaulted his wife, knowing his conduct was practically certain to cause her death, while being extremely indifferent to the value of human life. *See McCoy v. State, supra.* Accordingly, the circuit court erred by refusing Mr. Wyles's proffered instruction on the lesser-included offense of second-degree murder under Ark. Code Ann. § 5-10-103(a)(1).

### Manslaughter Instruction

Mr. Wyles also argues that the circuit court erred in refusing his proffered instruction on manslaughter. This argument

tracks the earlier argument that the circuit court erred in refusing his requested instruction on second-degree murder. Arkansas's manslaughter statute provides in pertinent part:

> (a) A person commits manslaughter if:

> (1) He causes the death of another person under circumstances that would be murder, except that he causes the death under the influence of extreme emotional disturbance for which there is reasonable excuse. The reasonableness of the excuse shall be determined from the viewpoint of a person in the defendant's situation under the circumstances as he believes them to be;

> \* \* \* \*

> (3) He recklessly causes the death of another person;

Ark. Code Ann. § 5-10-104(a)(1), (3) (Repl. 1997). The court gave a manslaughter instruction consistent with subsection 104(a)(3) as a lesser-included offense, but refused to instruct under subsection 104(a)(1). Regardless of whether manslaughter based on extreme emotional disturbance is a lesser-included offense to first-degree murder, we have held that it is reversible error to refuse the instruction where a rational basis exists. *See Rainey v. State,* 310 Ark. 419, 837 S.W.2d 453 (1992). In addition, we have held that the manslaughter instruction proffered by the defendant as a lesser-included offense was incomplete and erroneous because it omitted the subsection 104(a)(1) definition of manslaughter when there was a rational basis to warrant giving the instruction. *Bradley v. State, supra.* Thus, in this case, we need only determine whether there was any evidence in the record to show that Mr. Wyles "[caused his wife's] death under the influence of extreme emotional disturbance for which there is reasonable excuse."

In *Rainey,* we reversed a conviction for the failure to give the same instruction that Mr. Wyles sought in this case, where the jury was presented with evidence that the defendant shot the victim while in a fit of anger aroused by being threatened with a gun. *Rainy, supra.* In *Kail v. State,* 341 Ark. 89, 14 S.W.3d 878 (2000), we explained that passion springing from anger, resentment, fear, or terror will not alone reduce a homicide from murder to manslaughter; there must be a provocation inducing the passion such as physically fighting, a threat, or a brandished weapon which makes the passion irresistible. We held that despite feelings of

marital discord, there needed to be some evidence of provocation in the form of physical fighting, a threat, or a brandished weapon. *Id.*

In this case, there was evidence before the jury of marital discord, physical fighting, and a threat to kill. The testimony reveals that Mr. Wyles engaged in an extramarital affair after learning of his wife's affair with Jason Crow. The two had separated, but then attempted to reconcile. Following the attempted reconciliation, the two got into an argument. During the heat of that argument, Lisa pushed and hit the appellant and threatened to kill him. Thus, there is evidence in the record to show not only that the appellant and the victim suffered from severe marital problems, but also that the victim physically engaged the appellant by hitting him, and she threatened his life. Based on this evidence, the jury could have found that Mr. Wyles caused his wife's death under the influence of extreme emotional disturbance. Accordingly, we hold there was sufficient evidence to support the proffered manslaughter instruction.

The circuit court erred in refusing the two instructions proffered by Mr. Wyles. Therefore, we must reverse his conviction. In addition, because Mr. Wyles's remaining arguments are likely to arise upon retrial, we will address those points to serve as guidance to the trial court. *See Camargo v. State*, 327 Ark. 631, 940 S.W.2d 464 (1997). In his other points, Mr. Wyles maintains that the circuit court erred with respect to four separate evidentiary rulings. In addition, he contends that his Sixth Amendment right to counsel was vitiated by the circuit court's decision to disqualify appointed counsel who labored under a conflict of interest.

## II. Evidentiary Rulings

Mr. Wyles contends that the circuit court erred in four separate evidentiary rulings. In two points, he argues that the circuit court erred in excluding certain evidence, and in the other two, Mr.Wyles contends the circuit court erred in admitting certain evidence. We will not reverse a ruling on an evidentiary matter regarding the admissibility of evidence absent an abuse of discretion because such matters are left to the sound discretion of the trial court. *Garner v. State*, 355 Ark. 82, 131 S.W.3d 734 (2003).

### Hearsay Statement by Law Enforcement Investigator

At trial, Mr. Wyles attempted to introduce a statement made by a law enforcement investigator during a taped interview he was conducting with Mr. Wyles. During that interview, the investigator stated, "I think you killed her. It may have been an accident, but I think you got scared after it happened. I think you had to — because you were seeing this other girl." Mr. Wyles was attempting to have this statement admitted as an opinion of the investigator that Lisa's death was an accident. The circuit court sustained the State's objection on hearsay grounds.

■ On appeal, Mr. Wyles does not contest the hearsay ruling. Instead, he argues that the investigator's out-of-court statement was admissible under Arkansas Rules of Evidence 701 and 702 (2003). He made the same argument at trial. Arkansas Rule of Evidence 802 states, "[h]earsay is not admissible except as provided by law or by these rules." Neither Rule 701 nor Rule 702 provides an exception to the hearsay rule. As such, Mr. Wyles's argument is meritless.

### Testimony of Trisha Wyles

During its case-in-chief, the State called Trisha Wyles to testify. Mr. Wyles attempted to bolster his case by showing that he had never engaged in violent or threatening behavior with his wife. During defense counsel's cross-examination of Trisha, the following colloquy took place:

> DEFENSE COUNSEL: And during this time that you lived in the home with him, have you ever seen your father physically assault or attack
>
> THE STATE: Objection, Your Honor.
>
> THE COURT: Okay, Approach
>
> THE STATE: How is this relevant?
>
> DEFENSE COUNSEL: Your opening statement and your voir dire talked about that issue.
>
> THE STATE: I'm just asking because it's not relevant.
>
> THE COURT: I don't think that is relevant. I'll sustain that objection. [Defense Counsel], you may move to your next question.

DEFENSE COUNSEL: Yes sir. Thank you.

On appeal, Mr. Wyles argues that his line of questioning was proper under Arkansas Rule of Evidence 404(a)(1) (2003).

██ As reflected in the above-quoted colloquy, the Rule 404(a)(1) argument was not made to the trial court. We have steadfastly refused to consider arguments made for the first time on appeal. *Barrett v. State*, 354 Ark. 187, 119 S.W.3d 485 (2003); *See also McDole v. State*, 339 Ark. 391, 6 S.W.3d 74 (1999) (holding that a relevance objection based on Rule 402 did not preserve an argument based on Rule 404). The circuit court sustained the State's objection on relevancy grounds, and now Mr. Wyles seeks to challenge that ruling under Rule 404(a)(1). The issue has not been preserved.

### Medical Examiner's Testimony

For his third point of evidentiary error, Mr. Wyles asserts that the circuit court erred by allowing the State to question Dr. Charles Paul Kokes, the medical examiner, about strangulation as a cause of death. After performing the autopsy on the victim's body, Dr. Kokes concluded that the cause of death was blunt force injury. That conclusion was reflected in the autopsy report. The State's theory of the case was that Mr. Wyles choked his wife to death. At trial, the State sought an opinion from Dr. Kokes as to whether the victim could have died through strangulation. Mr. Wyles continued to object to the State's line of questioning on grounds of relevance and under Ark. R. Evid. 403 (2003).

██ As to his objection on grounds of relevance, Mr. Wyles challenges the relevancy of the medical examiner's testimony about whether the manner of death could have involved strangulation. Evidence is relevant if it has "any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence." Ark. R. Evid. 401 (2003). The State's case was premised on the fact that Mr. Wyles strangled his wife. There was testimony in the record that Mr. Wyles admitted choking his wife to death. Thus, the medical examiner's opinion on whether strangulation could have contributed to her death was clearly relevant; that is, it had some tendency to make the existence of death by strangulation more or less probable.

██ Even when evidence is relevant, it may be excluded if its probative value is substantially outweighed by the danger of

unfair prejudice, confusion of the issues, or misleading the jury. Ark. R. Evid. 403 (2003). The weighing of probative value versus prejudice is left to the sound discretion of the trial court. *Bohannon v. State,* 324 Ark. 158, 919 S.W.2d 198 (1996). Mr. Wyles argues that the State's questioning on the issue of strangulation prejudiced the jury to believe that she did in fact come to her death by means of strangulation. According to Mr. Wyles, the issue of strangulation was misleading.

▇▇▇ We have already explained that strangulation as the cause of death was critical to the State's case. Mr. Wyles suffered no unfair prejudice in the State following up on a theory that was well grounded in other evidence. Specifically, Mr. Wyles confessed to his son that he got Ms. Wyles in a choke hold and did not let her go. Likewise, the jury was not misled by Dr. Kokes's testimony. Once again, strangulation was an issue in the case and the medical examiner's opinion on the cause of death was highly probative. We cannot say the court abused its discretion.

### Hearsay Statement by the Victim

For his final point of evidentiary error, Mr. Wyles asserts that the trial court erred in allowing the victim's father, Kenneth Matthews, to testify about statements his daughter made regarding her plans to withdraw money from an investment account. In order to show motive, the State sought to prove that Mr. Wyles killed his wife and then withdrew funds from her investment account. Mr. Matthews's testimony was offered to show that Lisa Wyles would not have allowed the funds to be withdrawn.

At trial, when Mr. Matthews testified that he had a conversation with Lisa on October 13, 2001, concerning her investments, Mr. Wyles objected on hearsay grounds. The State retorted, arguing that the victim's hearsay statements were admissible as an existing mental condition under Ark. R. Evid. 803(3). The court overruled Mr. Wyles's objection, and Mr. Matthews testified as follows:

> I asked her, "Honey, are you losing money [in the stock market]?" She said, "Yeah, daddy, I lost between 3 and $500 already." I said, "Why don't you put it in a CD. At least you won't lose all of it." She said, "I can't. I just renewed it up. I would lose a third or a half of it, and I'm, saving up the money to buy Trisha a car."

Mr. Wyles argues that these hearsay statements by the victim were "not testimony concerning her intent to do something in the future as she simply did not intend to do anything with her investments but leave them as they were."

 Under Arkansas Rule of Evidence 803, the following type of evidence is not excluded by the hearsay rule:

> *Then Existing Mental, Emotional, or Physical Condition.* A statement of the declarant's then existing state of mind, emotion, sensation, or physical condition, such as intent, plan, motive, design, mental feeling, pain, and bodily health . . . .

Ark. R. Evid. 803(3) (2003). We have explained that the exception in Rule 803(3) allows for the admission of state-of-mind testimony concerning a victim's intent to do something in the future. *Jones v. Abraham*, 341 Ark. 66, 15 S.W.3d 310 (2000); *Nicholson v. State*, 319 Ark. 566, 892 S.W.2d 507 (1995). The hearsay statements at issue in this case relate to the victim's intent to save money in her investment account to buy her daughter a car. Saving money to buy a car certainly reflects an intent to do something in the future. We cannot say that the circuit court abused its discretion.

### III. Sixth Amendment Right To Counsel

For his final point on appeal, Mr. Wyles argues that the circuit court violated his Sixth Amendment right to counsel by appointing new counsel to his case after his original counsel was determined to have a conflict of interest. The thrust of this argument is that the conflict of interest suffered by counsel could have been removed by the exclusion of an unnecessary State witness.

During the discovery process prior to trial, the State indicated it might call William Riley as a witness. Mr. Riley was an inmate where Mr. Wyles was incarcerated while awaiting trial, and was expected to testify about a confession made by Mr. Wyles. At that time, Mr. Wyles was represented by appointed counsel, Attorney James Dunham. Attorney Dunham had previously represented Mr. Riley in a criminal proceeding in which Mr. Riley accepted a plea offer from the State.

Upon learning that the State might call Mr. Riley as a witness, Mr. Wyles filed a motion in which he claimed that allowing Mr. Riley to testify against Mr. Wyles would violate his

Sixth Amendment right to counsel. In addition, Mr. Wyles asserted that disqualification of Attorney Dunham would prejudice his right to a speedy trial and his constitutional right to counsel guaranteed by the Sixth Amendment to the United States Constitution and Article 2, section 10, of the Arkansas Constitution. Mr. Wyles also asserted that the exclusion of Mr. Riley from the case as a witness would not prejudice the State as another inmate, Douglas Scott Reeves, was prepared to testify to the same information. In his request for relief, Mr. Wyles asked the court to exclude "William Riley as a prosecution witness at the trial of this matter; or alternatively that Attorney James Dunham be relieved as counsel for Defendant, and another public defender be substituted as counsel for Defendant . . . ."

The circuit court conducted a hearing on the motion and determined that Attorney Dunham labored under a conflict of interest. At the hearing, Attorney Dunham testified that he was privy to non-public, confidential information about Mr. Riley that could be used to impeach his testimony. Accordingly, the court relieved Attorney Dunham as counsel and approved the substitution of Attorney William M. Pearson as counsel for the defendant.

 ██ We hold that Mr. Wyles has not preserved this argument for appeal. Specifically, in his motion, and at the hearing, Mr. Wyles requested the exclusion of Mr. Riley or the disqualification of Attorney Dunham. The court granted his alternative request and relieved Attorney Dunham. Now, Mr. Wyles contends that the court erred in relieving Attorney Dunham. Under the doctrine of invited error, we have held that one cannot be heard to complain of that error for which he was responsible. *McGhee v. State*, 330 Ark. 38, 41, 954 S.W.2d 206, 208 (1997). Moreover, a defendant cannot complain about receiving the relief he or she requested. *Noel v. State,* 331 Ark. 70, 960 S.W.2d 439 (1998). Because Mr. Wyles received the relief he requested, his point is without merit.

In sum, we hold that the trial court erred in refusing Mr. Wyles's proffered instructions on second-degree murder and manslaughter. However, his remaining points on appeal are meritless.

Reversed and remanded.