2009 Ark. App. 714

**Tyrice BRADLEY, Appellant,**

v.

**STATE of Arkansas, Appellee.**

**No. CA CR 09–209.**

Court of Appeals of Arkansas.

Oct. 28, 2009.

Paul N. Ford, Jonesboro, for appellant.

Dustin McDaniel, Att'y Gen., by: Deborah Nolan Gore, Ass't Att'y Gen., for appellee.

COURTNEY HUDSON HENRY, Judge.

After a bench trial, the Monroe County Circuit Court found appellant Tyrice Bradley guilty of second-degree murder and first-degree battery and sentenced him to concurrent terms of twenty years in prison. Appellant raises four issues for reversal of his convictions. He contends that the trial court (1) erred by failing to require the prosecutor to disclose the identity of a confidential informant; (2) abused its discretion by recalling and interrogating two of the State's witnesses; (3) erred by denying his motion for a directed verdict on the issue of accomplice liability; and (4) erred by denying his request to suppress the in-court identifications of two witnesses. Finding no error, we affirm.

The testimony at trial disclosed that, on August 4, 2007, Officer Richard Bryson of the Forrest City Police Department was providing security for a party at the convention center in Brinkley. Bryson disbanded the party because juveniles from Brinkley would not stop pushing young people from Forrest City on the dance floor. Afterward, juveniles from both towns gathered outside the Notch Club in Brinkley. Gunfire erupted, and two young men from Brinkley were shot. Jimmy Aldridge sustained a gunshot wound to the shoulder, and another bullet struck Thomas Baker in the neck.

Joe Cline was riding a moped near the Notch Club when he heard the gunfire. He drove to an alley and proceeded toward the Bank of Brinkley. Cline observed men, wearing red shirts and red hats, riding in a burgundy vehicle. Cline said that one of the men exited the vehicle and began shooting at him. The shots fired at Cline did not strike him.[1] Aldridge survived his wound, although the bullet could not be surgically removed from his shoulder. Baker, however, died from his injury.

Special Agent Phillip Hydron of the Arkansas State Police served as the chief investigator of the case. He surmised that different weapons were used in the shooting in front of the club and the shooting near the bank. Agent Hydron believed that a revolver was used at the club because no shell casings were found there. He concluded that an automatic weapon was used at the bank because officers found spent shell casings at that location.

Witnesses at the Notch Club described the person who fired the shots as wearing a red shirt, a red hat, and a gold "grill" on his teeth. Officer Bryson knew appellant as a high-school student from Forrest City, and Bryson recalled that appellant was dressed in this fashion at the party in the convention center. Video footage from a surveillance camera at the convention center confirmed Bryson's recollection.

Krystal Lee, who lives in Brinkley, attended the party at the convention center and was among those who were standing outside the Notch Club. At trial, she testified that she met appellant for the first time at the party and that they exchanged cell-phone numbers before leaving the con-

---

1. However, the prosecutor charged appellant with the aggravated assault of Cline. The trial court dismissed this charge after granting appellant's motion for a directed verdict.

vention center. Lee said that she later called appellant and asked him if he was going to the club. She testified that appellant first said that he was driving home to Forrest City but that appellant called her back and said that he was coming to the club. She said that, after appellant and his friends arrived, appellant walked to a vehicle and retrieved something from the trunk. Lee testified that appellant started shooting when he came back to the club. She said that she ran when the first shot was fired and heard three more shots as she fled. Lee stated that she had no doubt in her mind that appellant was the person who fired the shots.

Kendall Swanigan, also from Brinkley, testified that a fight ensued between boys from Forrest City and Brinkley in the parking lot of the convention center after the party. Swanigan and his friends met at the Notch Club. He said that two carloads of boys from Forrest City arrived later. Swanigan testified that the groups from the two towns argued as they stood on opposite sides of the porch in front of the bar. He said that two of the Forrest City boys had guns, and Swanigan identified appellant as one of those two boys, stating that appellant was wearing red clothing, a red hat, and a gold grill. Swanigan testified that he heard but did not see the first shot but that he saw appellant fire the second shot. He said that the second shot struck Baker and that appellant was the young man who shot him.

Benjamin Moorman, another Brinkley resident, testified that the two groups were arguing in front of the bar and that the shooting began as the boys from Forrest City turned as if to leave. He said that appellant was wearing a red shirt and hat with a gold grill in his mouth. Moorman stated that he was positive that appellant was the one who started the shooting.

Joyce Palmer, who also resides in Brinkley, was sitting in her car with a friend outside the Notch Club. She testified that she saw the boys from Forrest City arrive and later saw some of them go to their cars and retrieve something from the trunk. Palmer stated that the gunfire began as soon as the Forrest City boys walked back to the club. She described one of the boys as wearing a red shirt and hat with a gold grill in his mouth.

Following his motion for a directed verdict, appellant presented the testimony of Douglas Miller. Miller acknowledged that he was awaiting trial on charges of murder, battery, and aggravated assault in connection with the shootings. He testified that he and his companions, including appellant, drove from Forrest City to Brinkley to attend the party. Miller stated that they rode in appellant's red Thunderbird. After the party ended, they drove to the Notch Club. Miller said that a man came out of the club and made a threatening remark and that, as this man began removing his shirt, William Franklin, a friend of Miller from Forrest City, brandished a revolver and started shooting. Miller further testified that he and his friends ran to the car and drove back to Forrest City and that appellant and Franklin arrived moments later in another vehicle. Miller said that Franklin boasted about shooting three people.

Napoleon Marlowe, also of Forrest City, testified that he, appellant, Franklin, and two others left the party at the convention center in Franklin's burgundy Grand Marquis. He said that they had planned to go home but that they decided to go to the Notch Club at the invitation of some young women. Marlowe said that he and appellant were sitting on a wall talking to the young women when Marlowe saw a man removing his shirt in preparation for a fight. Marlowe testified that Franklin

then pulled out a revolver and began shooting. Marlowe further testified that he, appellant, and Franklin were wearing gold grills that evening and that both appellant and Franklin were wearing red shirts and hats.

Appellant also testified at trial. He recalled that he and his friends drove to Brinkley that evening in two cars. One was a red Thunderbird that appellant borrowed. The other was a burgundy Grand Marquis that belonged to Franklin's aunt, who allowed appellant to drive it because Franklin had no driver's license. Appellant also recalled that a fight took place at the convention center, but he denied meeting Lee at the party and said that he did not exchange phone numbers with her. Appellant testified that he was with Marlowe at the Notch Club speaking to some girls when gunfire erupted. He said that he and Marlowe ran to the car but had to wait because Franklin had the keys. Appellant testified that he did not have a gun that evening and that he and Franklin were wearing similar clothing and gold grills. Appellant said that Franklin told him when they got back to Forrest City that "he had dropped about three people."

As part of his case, appellant introduced into evidence a judgment and commitment order reflecting that Franklin pled guilty to second-degree murder in connection with this incident. After appellant rested, he renewed his motion for a directed verdict.

The trial court postponed closing arguments for another day. When that date arrived, the trial court informed the parties that he was recalling Lee to the witness stand. Over appellant's objection, the court asked Lee about the telephone contacts she had with appellant on the night of the shootings. Once again, she recalled phoning appellant on his cell phone and that he called her back a few minutes later. Lee did not remember appellant's cell-phone number but stated that she gave the number to Special Agent Hydron. Over appellant's continuing objection, the trial court recalled Agent Hydron. He testified that he looked at the log of received calls on Lee's cell phone and recorded the number Lee identified as appellant's cell-phone number.

At the conclusion of this testimony, the trial court granted appellant's request for a continuance to allow him the opportunity to offer additional testimony. When court reconvened, Agent Hydron corrected his testimony about appellant's cell-phone number. Hydron said that, after listening to a tape of his interview with Lee, he learned that Lee did not have her cell phone with her during the interview and that Lee later relayed the information about appellant's cell-phone number. At the conclusion of this testimony, appellant renewed his motion for a directed verdict. The court denied the motion and recessed. On a subsequent date, the trial court pronounced its decision finding appellant guilty of second-degree murder and first-degree battery.

Appellant argues that the trial court erred in denying his motions for a directed verdict as his third point on appeal. We treat motions for a directed verdict as a challenge to the sufficiency of the evidence. *Strong v. State*, 372 Ark. 404, 277 S.W.3d 159 (2008). Preservation of appellant's right against double jeopardy requires that we consider his challenge to the sufficiency of the evidence first, even though it is not listed as his first point on appeal. *Grillot v. State*, 353 Ark. 294, 107 S.W.3d 136 (2003). In reviewing a challenge to the sufficiency of the evidence, we view the evidence in a light most favorable to the State and consider only the evidence that supports the verdict. *Strong, supra.* We affirm a conviction if

substantial evidence exists to support it. *Id.* Substantial evidence is that which is of sufficient force and character that it will, with reasonable certainty, compel a conclusion one way or the other without resorting to speculation or conjecture. *Id.* The duty of resolving conflicting testimony and the credibility of witnesses is left to the discretion of the trier of fact. *Boyd v. State,* 369 Ark. 259, 253 S.W.3d 456 (2007).

■ Appellant argues on appeal that the trial court should have granted his motion for a directed verdict on accomplice liability. Appellant asserts that he was not the only person the State charged with having committed these crimes and that one of those persons, Franklin, pled guilty to second-degree murder. Appellant maintains that, in light of Franklin's guilty plea, the State could only prosecute appellant as an accomplice. Appellant contends that the record is devoid of any evidence demonstrating that appellant acted as an accomplice to Franklin and that the State only presented evidence demonstrating that he was the actual perpetrator of these crimes. Appellant contends that the trial court's denial of his motion for a directed verdict allowed the State to maintain inconsistent positions in its theories of guilt.

Appellant's argument assumes facts that are not in evidence. Therefore, we must affirm without reaching the merits of appellant's argument. *Miles v. State,* 350 Ark. 243, 85 S.W.3d 907 (2002) (declining to address merits of argument that prosecution maintained inconsistent factual theories in appellant's and accomplice's trials when the record did not support claim that theories were inconsistent). As proof of his contention that the State was pursuing inconsistent theories, appellant introduced into evidence the judgment and commitment order reflecting that Franklin pled guilty to the offense of second-degree mur-

der. The judgment, however, does not indicate the State's theory of Franklin's criminal responsibility. Thus, we cannot ascertain from the record before us under what theory the prosecution proceeded as to Franklin, and therefore, the record does not support the factual basis of appellant's claim. Consequently, we must affirm because it is well settled that the appellant bears the burden of producing a record that demonstrates error. *Id.*

■ Next, we consider appellant's argument that the trial court erred by not requiring the State to disclose the identity of a confidential informant. This argument stems from an email that Ruben Ivey, a Forrest City police officer, sent to Agent Hydron. In the email, Officer Ivey stated that a confidential informant told him that he or she was present at the shooting and that Miller and Franklin were the shooters. Appellant filed a pretrial motion seeking disclosure of the informant's identity. The trial court granted the motion. Later, the prosecutor wrote appellant's attorney advising that Officer Ivey could not remember the name of the informant but that Ivey would ask other investigators if they recalled the identity of this person. In subsequent correspondence, the prosecutor informed appellant's counsel that Agent Hydron believed that the informant was Tierra Williams, whose statement the prosecutor had already provided to appellant.

At a pretrial hearing, appellant's counsel renewed the request for the disclosure of the informant's identity, arguing that appellant did not believe that Tierra Williams was the informant. In terms of relief, counsel stated, "So once again, your Honor, I ask for the following: I ask for the identity of this informant to be made known, or, alternatively, that this email communication be admissible evidence into my case in the defense of this matter."

The prosecutor maintained that he had disclosed the informant's identity but stated that he had no objection to appellant introducing the email into evidence. In light of the parties' agreement, the trial court stated that it would accept the email into evidence.

Appellant contends on appeal that the informant possessed exculpatory information that the prosecutor was obligated to disclose. Rule 17.1(d) of the Arkansas Rules of Criminal Procedure provides:

Subject to the provisions of Rule 19.4 [concerning protective orders], the prosecuting attorney shall, promptly upon discovering the matter, disclose to defense counsel any |₁₀material or information within his knowledge, possession, or control, which tends to negate the guilt of the defendant as to the offense charged or would tend to reduce the punishment therefor.

The prosecution's suppression of evidence favorable to an accused violates the defendant's due process rights, where evidence is material either to guilt or punishment, irrespective of the good faith or bad faith of the prosecution. *Brady v. Maryland,* 373 U.S. 83, 83 S.Ct. 1194, 10 L.Ed.2d 215 (1963). The prosecutor must disclose information in sufficient time to permit the defense to make beneficial use of it, and withholding significant evidence that denies a defendant a fair trial is reversible error. *Smith v. State,* 352 Ark. 92, 98 S.W.3d 433 (2003).

In this case, the State insisted that it had provided appellant with the name of the confidential informant mentioned in the email. Dissatisfied with the State's response, appellant asked for relief in the alternative, either disclosure of the informant's name or the admission of the email into evidence. The trial court granted appellant's request to admit the email into evidence. Now, appellant faults the trial court for not pressing the State to further investigate the matter. However, a defendant cannot claim error when he prays for alternative relief and the trial court grants one form of the requested relief. *Wyles v. State,* 357 Ark. 530, 182 S.W.3d 142 (2004). This is so because, under the doctrine of invited error, one cannot be heard to complain of error for which he is responsible. *Id.* Moreover, a defendant cannot complain about receiving the relief he requested. *Id.* In addition, we note that appellant at all times knew that Officer Ivey was the source of the information concerning the confidential informant, and appellant was free to interview the officer if he believed that the State's |₁₁identification of the informant was incorrect. While the State is obliged to disclose exculpatory evidence, the prosecutor should not be required to disclose information already in the possession of the defendant or obtainable through the exercise of reasonable diligence. *Johninson v. State,* 317 Ark. 431, 878 S.W.2d 727 (1994). A defendant cannot rely on discovery as a total substitute for his own investigation. *Smith, supra.* We find no error on this point.

Appellant's next issue concerns the trial court's decision to recall and interrogate witnesses Krystal Lee and Agent Hydron. Appellant asserts that the trial court's desire to hear additional evidence reveals that the court had reasonable doubt as to guilt and that the trial court erred by not resolving those doubts in favor of the presumption of innocence.

A trial court has some responsibility for the proper conduct of trial, the ascertainment of truth, and the achievement of justice. *Jordan v. Guinn,* 253 Ark. 315, 485 S.W.2d 715 (1972). Rule 614 of the Arkansas Rules of Evidence author-

izes a trial court on its own motion to call and interrogate witnesses. A trial court may, in the interest of justice, direct questions to a witness calculated to elicit the truth about the subject matter being investigated, provided they are carefully framed in a manner not indicating any opinion on the merits of the controversy. *Washington v. State*, 267 Ark. 1040, 594 S.W.2d 29 (1980). The trial court has some discretion in examining witnesses to clarify their testimony, and when no prejudice appears, there is no abuse of that discretion. *Id.* The reasons for restraint are minimal when the judge is the trier of fact, and his responsibilities for elicitation of all pertinent facts are perhaps increased. *Jordan, supra.* He has the right and duty to ask questions to clarify an obscurity in the testimony or even to develop facts in regard to some feature of the case he feels has not been properly developed. *See id.*

Here, the trial court sought to confirm Lee's testimony that she spoke to appellant on the telephone on the night in question. We find no abuse of discretion in the trial court's endeavor to clarify this matter. We also perceive no prejudice to appellant, and we will not reverse absent a showing of prejudice. *See Cluck v. State*, 365 Ark. 166, 226 S.W.3d 780 (2006). The trial court gave appellant the opportunity to cross-examine these witnesses and allowed him a continuance to rebut the testimony they offered. In addition, the testimony did not establish that the phone calls were made because no one confirmed that the number purportedly stored in Lee's phone was appellant's phone number. Thus, even if the trial court overstepped its authority, appellant failed to demonstrate prejudice.

Appellant's remaining argument is that the trial court erred by not suppressing the in-court identifications of witnesses Swanigan and Moorman.[2] Within days of the shooting, these witnesses, along with Lee, identified appellant from a photo array of six persons. The array included the photographs of appellant, Miller, and Franklin, the three men charged in this case. The photos depicted appellant and Miller wearing gold grills, while the mouths of the other men were closed. Appellant argues that the photo spread was unduly suggestive because his photograph was placed in the "dominant" position on the top left side of the array and because only he and Miller were shown wearing gold mouthpieces. Appellant further contends that Swanigan's identification of appellant was not reliable because Swanigan admitted that he had smoked marijuana on the night of the shootings. He also argues that Moorman's identification is suspect because Agent Hydron turned off the tape recording of Moorman's interview prior to his viewing the array.

A pretrial identification violates the Due Process Clause when there are suggestive elements that make it all but inevitable that the victim will identify one person as the culprit. *Fields v. State*, 349 Ark. 122, 76 S.W.3d 868 (2002). In determining whether an in-court identification is admissible, the court looks first at whether the pretrial identification procedure was unnecessarily suggestive or is otherwise constitutionally suspect, and it is the appellant's burden to show that the pretrial identification is suspect. *Mezquita v. State*, 354 Ark. 433, 125 S.W.3d 161 (2003). Reliability is the linchpin in determining the admissibility of identification

---

**2.** In his brief, appellant states that he is challenging the in-court identifications of Swanigan and Lee. It is clear to us that appellant has confused Lee with Moorman. Therefore, we confine our discussion to Swanigan and Moorman.

testimony. *Id.* Even when an identification procedure is impermissibly suggestive, the trial court may determine that, under the totality of the circumstances, the identification was sufficiently reliable for the matter to be submitted to the fact finder, and then it is for the fact finder to decide the weight the identification testimony should be given. *Id.* In determining reliability, the following factors are considered: (1) the prior opportunity of the witness to observe the alleged act; (2) the accuracy of the prior description of the accused; (3) any identification of another person prior to the pretrial identification procedure; (4) the level of certainty demonstrated at the confrontation; (5) the failure of the witness to identify the defendant on a prior occasion; and (6) the lapse of time between the alleged act and the pretrial identification procedure. *Fields, supra.* We do not reverse a trial court's ruling on the admissibility of identification evidence unless it is clearly erroneous, and we do not inject ourselves into the process of determining reliability unless there is a very substantial likelihood of irreparable misidentification. *Hutcherson v. State,* 74 Ark.App. 72, 47 S.W.3d 267 (2001).

■ Our review of the photographic array and the record leads us to conclude that the trial court's decision is not clearly erroneous. A lineup is not per se unconstitutionally suggestive merely because only one person was wearing a piece of clothing similar to that worn by the offender. *Phillips v. State,* 327 Ark. 1, 936 S.W.2d 745 (1997); *Bishop v. State,* 310 Ark. 479, 839 S.W.2d 6 (1992); *Hogan v. State,* 281 Ark. 250, 663 S.W.2d 726 (1984). Here, appellant was not the only person in the lineup who wore a gold grill. As such, it was not inevitable that the witnesses would select one person as the perpetrator. Nor can we conclude that the array was impermissibly suggestive because appellant's photograph was positioned on the top left corner. Appellant has cited no authority that the positioning of the photo made it more likely to be chosen by a witness. We will not consider an argument that presents no citation to authority or convincing argument. *Kelly v. State,* 350 Ark. 238, 85 S.W.3d 893 (2002).

■ With respect to appellant's argument that Swanigan was under the influence of marijuana, the trial court weighed all of the factors bearing on the issue of reliability and determined that Swanigan's identification of appellant was reliable. The court noted that Swanigan had ample opportunity to observe the shooting; that he gave an accurate description of appellant; that he did not identify another person as the culprit; that his testimony at trial identifying appellant as the perpetrator was positive and unequivocal; that he had not failed to identify appellant on a prior occasion; and that the lapse of time between the crimes and the pretrial identification was short. We cannot say that the trial court's ruling was clearly erroneous.

We reach the same conclusion as to Moorman. The trial court also considered the appropriate factors in determining the reliability of Moorman's identification and allowed the testimony to be admitted. Although the tape was turned off during his interview, Moorman did not testify that anyone suggested to him whom he was to select in the lineup. We thus cannot accept appellant's suggestion that Agent Hydron sought to influence Moorman's identification. The trial court's decision concerning the reliability of Moorman's identification was not clearly erroneous.

Affirmed.

ROBBINS and KINARD, JJ., agree.