2009 Ark. App. 839

**Lorri Jean RYE, Appellant**

v.

**STATE of Arkansas, Appellee.**

**No. CA CR 09–96.**

Court of Appeals of Arkansas.

Dec. 9, 2009.

Eisele Law Firm, P.A., Benton, by: Justin Eisele, for appellant.

Dustin McDaniel, Att'y Gen., by: Karen Virginia Wallace, Ass't Att'y Gen., for appellee.

KAREN R. BAKER, Judge.

A Crawford County jury convicted appellant, Lorri Jean Rye, of two counts of rape of her three-year-old son, in violation of Arkansas Code Annotated section 5–14–103 (Repl.2006). She received two ten-year sentences to be served consecutively. Appellant presents three arguments on appeal. First, she alleges that the trial court erred in denying her motion for a directed verdict. Second, she alleges that the trial court erred in admitting child-hearsay evidence because the presumption of unreliability and inadmissibility was not met under Arkansas Rule of Evidence 804(b)(7) (2009) and because the court failed to find that the ability to cross-examine a witness would have been of marginal utility. Third, she alleges that the trial court erred by accepting a legal stipulation to incompetency of a witness. Finding no error, we affirm.

Appellant was arrested and charged with two counts of rape, a Class Y felony. It was alleged that on or between October 10 and October 15, 2007, appellant engaged in sexual intercourse or deviate sexual activity with the victim, her son, who was less than fourteen years of age. Appellant was interviewed by detectives and during the interview, appellant gave offi-

cers a statement about the alleged incident. In those statements, she indicated that she placed her mouth on the child's penis.

Prior to the trial, a hearing was held to establish the admissibility of child hearsay through the testimony of the child's aunt, Helen Hawthorne. Ms. Hawthorne was the only witness at this hearing. She testified that appellant was married to her brother and that she watched the child-victim "a substantial portion of the time." She stated that she kept the child during the day while appellant worked and, when necessary, she kept the child at night, on weekends, and even overnight. She testified that on October 17, while she was keeping the child, he made some concerning statements while sitting in her lap. Specifically, the child asked Ms. Hawthorne if she wanted to "play a game." She responded that she would. The child then asked if she would want to "play with [his] weenie balls," to which she responded, "No." The child next asked if she wanted him to "play with [her] wee wee." Again, Ms. Hawthorne responded, "No." She explained to the child that she did not play such games. The child continued with his questions, asking such things as "Do you want me to put my weenie balls in your wee-wee?" and "Do you want to suck my weenie balls?" Ms. Hawthorne testified that she responded "No" each time the child asked a question, emphasizing to him that she did not "play those games." The child's next statement was, "Well, Mama does." Ms. Hawthorne testified that the dialogue ended and the child climbed down from her lap and went to watch television. Ms. Hawthorne testified that she was "just devastated" and said that it made her "sick to [her] stomach."

She did not report the incident to authorities until October 19 because October 18 was the child's birthday. She explained to authorities that the child made the statements only on October 17 and did not repeat the statements to her again. She also told them that she did not at any time after the incident question the child about the statements.

Ms. Hawthorne testified that she and appellant were "very close" despite the potential divorce between appellant and Ms. Hawthorne's brother.[1] The two had discussed the fact that Ms. Hawthorne would continue to keep the child even after the possible dissolution of appellant's marriage. The parties stipulated that based on the victim's age, he was unavailable due to incompetency. The court accepted the stipulation by the parties and, at the conclusion of the hearing, the court found that the child-victim was unavailable and that the hearsay testimony was within the child-hearsay exception in Arkansas Rule of Evidence 804(b)(7).

Ms. Hawthorne also testified at trial. She reiterated the statements made by the child to her on October 17. She testified that the child made the statements while sitting in her lap. He and Ms. Hawthorne were tickling each other, when the child "kind of hit [her] knee with his private area." At that moment, the child said, "Oh, that hurt my weenie balls." She explained to the child that "[they] don't call them that." The child's response was, "Well, my Mama does." She testified that the victim continued to ask her such questions as, did she want to "play with [his] weenie balls," "put [his] weenie balls in [her] mouth," or "put his weenie balls in [her] wee wee." She told him that she did not play such games, and the child re-

1. Ms. Hawthorne's brother was serving a prison sentence in Arkansas for child molesta- tion.

sponded again, "Well, my Mama does." Ms. Hawthorne stated that "he was just rubbing [himself] the whole time he said it and [she] just tried to be just as, you know, normal as possible because [she] didn't want to just, you know, get irate with him or anything. So, you know, [she] didn't know what to—so, [she] just got real sick to [her] stomach and everything. So, [she] said, no, let's just watch TV, okay?" She was extremely upset. Because the child was excited about his birthday the next day, Ms. Hawthorne did not report the incident until October 19. On October 19, she spoke with Officer Wiley about the child's statements.

Detective Perry of the Van Buren Police Department testified that he went to appellant's home to speak with her about the allegations. When Detective Perry arrived, appellant and the child were home. He told appellant that he needed to speak with her about the allegations, and appellant "said nothing." They went to the police station, where appellant was questioned. During a video-taped interview by Detective Perry and Officer Lindley, which was played for the jury, appellant initially denied that she touched the child "sexually." Further into the interview, she admitted that she had placed her son's penis in her mouth on two occasions when she thought he was asleep. Both officers testified as to appellant's confession. She also stated that when she was a child, she was sexually abused by family members.

Dr. Paul Deyoub, a forensic psychologist, testified that he conducted a forensic evaluation of appellant. In the evaluation, he administered testing, including intelligence testing, personality testing, and a "Competency to Stand Trial Assessment." He concluded that appellant did not have any mental illness and that she was of high-average intelligence, performing at the seventy-seventh percentile. Dr. Deyoub testified that during the evaluation, appellant denied that she had committed the offense and that she did not indicate to Dr. Deyoub that she had been sexually abused by a family member.

After the State rested its case, appellant's counsel made a motion for a directed verdict. In the motion, counsel stated,

Your Honor, since this is the end of the State's case and they're resting on their case, Your Honor, I move for a directed verdict . . . I'm challenging the sufficiency of the evidence that the State has brought forward at this point in that, if the jury were to, that enough evidence has not been presented in such a way or an adequate amount to meet the burden to proceed forward at this point; that the jury's, the information they have received from the State, would, that they would have to basically, guess or you know, as to the evidence presented, Your Honor. And that there's just—there's not enough evidence to go forward.

The trial court denied the motion. At the close of the evidence, appellant's counsel renewed the motion for a directed verdict, which was again denied. The jury found appellant guilty of two counts of rape and sentenced her to two, ten-year terms of imprisonment to be served consecutively. This appeal followed.

For her first point on appeal, appellant alleges that the trial court erred in denying her motion for a directed verdict. In appellant's brief, however, she concedes that the directed-verdict[6] motion made on her behalf at trial did not comply with Arkansas Rule of Criminal Procedure 33.1(c) (2009) in that the motion did not state the specific grounds upon which the proof was insufficient. Rule 33.1 states in relevant part:

(a) In a jury trial, if a motion for directed verdict is to be made, it shall be

made at the close of the evidence offered by the prosecution and at the close of all of the evidence. A motion for directed verdict shall *state the specific grounds therefor.*

. . . .

(c) The failure of a defendant to challenge the sufficiency of the evidence at the times and in the manner required in subsections (a) and (b) above will constitute a waiver of any question pertaining to the sufficiency of the evidence to support the verdict or judgment. A motion for directed verdict or for dismissal based on insufficiency of the evidence must specify the respect in which the evidence is deficient. A motion merely stating that the evidence is insufficient does not preserve for appeal issues relating to a specific deficiency such as insufficient proof on the elements of the offense.

(Emphasis added.)

█ While appellant did move for a directed verdict, her motion failed to identify in what respect the evidence was insufficient. *See* Ark. R.Crim. P. 33.1(a). A general motion that merely asserts that the State has failed to prove its case, such as the motion made by appellant in this case, is inadequate to preserve the issue for appeal. *Carey v. State,* 365 Ark. 379, 230 S.W.3d 553 (2006). The reason underlying the requirement that specific grounds be stated and that the absent proof be pinpointed is that it allows the circuit court the option of either granting the motion, or, if justice requires, allowing the State to reopen its case and supply the missing proof. *Id.* Appellant did not preserve her argument for appeal. As a result, we will not address the merits of her argument as to the sufficiency of the evidence.

█ |₇For her second point on appeal, appellant alleges that the trial court erred in admitting child-hearsay evidence because the presumption of unreliability and inadmissibility was not met under Rule 804(b)(7) and because the court failed to find that the ability to cross-examine a witness would have been of marginal utility.[2] A trial court is accorded wide discretion in evidentiary rulings, and its ruling on a hearsay question will not be reversed unless the appellant can demonstrate an abuse of discretion. *Peterson v. State,* 349 Ark. 195, 76 S.W.3d 845 (2002). Abuse of discretion is a high threshold that does not simply require error in the trial court's decision but requires that the trial court acted improvidently, thoughtlessly, or without due consideration. *Threadgill v. State,* 347 Ark. 986, 69 S.W.3d 423 (2002). Moreover, we do not presume that prejudice results from an evidentiary error, and thus, we will not reverse a trial court's ruling unless the appellant demonstrates prejudice. *Gaines v. State,* 340 Ark. 99, 8 S.W.3d 547 (2000).

Hearsay is a statement, other than one made by the declarant while testifying at the trial or hearing, offered in evidence to prove the truth of the matter asserted. Ark. R. Evid. 801(c) (2009). Hearsay testimony is generally inadmissible. Ark. R.

---

**2.** Appellant specifically states in her argument that she is *not* raising a Confrontation Clause argument pursuant to *Crawford v. Washington,* 541 U.S. 36, 124 S.Ct. 1354, 158 L.Ed.2d 177 (2004), because the child-victim's statements were nontestimonial in nature and not prohibited by the Confrontation Clause. *See Seely v. State,* 373 Ark. 141, 282 S.W.3d 778 (2008), *cert. denied,* 555 U.S. 898, 129 S.Ct. 218, 172 L.Ed.2d 169 (2008) (holding that a statement made to a nongovernmental official is presumptively nontestimonial, and a child's statements to her mother about sexual abuse were not testimonial in nature when they were neither made nor solicited to be used in court but for the purpose of determining what was causing J.B.'s pain and what kind of treatment should be sought to alleviate it).

Evid. 802. Hearsay is, however, admissible if the declarant is unavailable and the statement is made by a child under the age of ten concerning any type of sexual offense against him. Ark. R. Evid. 804(b)(7). The trial court must conduct a hearing outside the presence of the jury and, with the evidentiary presumption that the statement is unreliable and inadmissible, find that the statement offered possesses sufficient guarantees of trustworthiness that the truthfulness of the child's statement is so clear from the surrounding circumstances that the test of cross-examination would be of marginal utility. Ark. R. Evid. 804(b)(7)(A). In deciding whether the statement is sufficiently trustworthy, the trial court may employ any factor it deems appropriate including, but not limited to, the following: (1) the spontaneity of the statement; (2) the lack of time to fabricate; (3) the consistency and repetition of the statement and whether the child has recanted the statement; (4) the mental state of the child; (5) the competency of the child to testify; (6) the child's use of terminology unexpected of a child of similar age; (7) the lack of a motive by the child to fabricate the statement; (8) the lack of bias by the child; (9) whether it is an embarrassing event the child would not normally relate; (10) the credibility of the person testifying to the statement; (11) suggestiveness created by leading questions; (12) whether an adult with custody or control of the child may bear a grudge against the accused offender, and may attempt to coach the child into making false charges. Ark. R. Evid. 804(b)(7)(A).

Appellant's argument is unavailing. The parties stipulated that the child was incompetent to testify. A hearing was held for the court to determine that the statement offered possessed sufficient guarantees of trustworthiness that the truthfulness of the child's statement was so clear from the surrounding circumstances that the

test of cross-examination would have been of marginal utility. At that hearing, the trial court heard from the victim's aunt, to whom the victim had made the statements. After hearing the testimony, the court found that the statement had guarantees of truthfulness based on the spontaneous nature, the fact that the statements had not been recanted or recited since the original statement, the striking terminology used by the minor, the lack of a motive to fabricate, and the lack of evidence of any ill-will. The trial court found that the statements fit within the child-hearsay exception set forth in Ark. R. Evid. 804(b)(7). Based on the foregoing, there was no abuse of discretion by the trial court, and we affirm on this point.

■ Appellant's final argument on appeal is that the trial court erred by accepting the parties' legal stipulation to incompetency of a witness. In her brief, appellant concedes that she agreed at trial to the stipulation that the victim was incompetent. Appellant alleges that this issue "by the very nature of it being a stipulation, [could not] have been objected to at the trial court level by appellant's trial counsel," and appellant admittedly did not raise this argument in the circuit court. Our law is well settled that we will not consider issues raised for the first time on appeal, even constitutional ones, because the trial court never had the opportunity to rule on them. *Thomas v. State*, 370 Ark. 70, 74, 257 S.W.3d 92, 96 (2007). A contemporaneous objection is required to preserve an issue for appeal; however, the supreme court has recognized four exceptions to the contemporaneous-objection rule, known as the *Wicks* exceptions. *Id.* at 74, 257 S.W.3d at 97 (citing *Wicks v. State*, 270 Ark. 781, 606 S.W.2d 366 (1980)). *Wicks* presents the following four, narrow exceptions that are to be rarely applied: (1) when the trial court, in

a death-penalty case, fails to bring to the jury's attention a matter essential to its consideration of the death penalty itself; (2) when defense counsel has no knowledge of the error and thus no opportunity to object; (3) when the error is so flagrant and so highly prejudicial in character that the trial court should intervene on its own motion to correct the error; and (4) when the admission or exclusion of evidence affects a defendant's substantial rights. *See Thomas*, 370 Ark. at 75, 257 S.W.3d at 97; *Anderson v. State*, 353 Ark. 384, 395–98, 108 S.W.3d 592, 599–600 (2003).

While appellant does not specify the exact *Wicks* exception upon which she is relying, it is clear that the first and second exceptions do not apply in this case. It has been said that the third exception supporting sua sponte intervention has been applied only to structural errors, such as the denial of a jury trial, and not in the case of evidentiary errors. *See Anderson, supra.* *Wicks* stressed that the third exception "is a mere possibility, for it has not yet occurred in any case. That relates to the trial court's duty to intervene, without an objection, and correct a serious error either by an admonition to the jury or by ordering a mistrial." *Buckley v. State*, 349 Ark. 53, 65, 76 S.W.3d 825, 832 (2002) (citing *Wicks*, 270 Ark. at 786, 606 S.W.2d at 369). However, with respect to this third exception, the court cautioned that an appellant "can not predicate error upon the failure of the court to make a ruling that he did not at the time ask the court to make, unless the remarks were so flagrant and so highly prejudicial in character as to make it the duty of the court on its own motion to have instructed the jury not to consider the same." *Id.*

The *Wicks* court noted a fourth possible exception that "might arguably be asserted on the basis of [then] Uniform Evidence Rule 103(d)." *Buckley*, 349 Ark. at 65, 76 S.W.3d at 832 (citing *Wicks*, 270 Ark. at 787, 606 S.W.2d at 370). That rule, which is now Ark. R. Evid. 103(d), provides that "[n]othing in this rule precludes taking notice of errors affecting substantial rights, although they were not brought to the attention of the court." *Buckley*, 349 Ark. at 65, 76 S.W.3d at 832–33. Again, however, the court warned about relying on this exception, stating as follows: "That statement, however, is negative, not imposing an affirmative duty, and at most applies only to a ruling which admits or excludes evidence. If there is any other exception to our general rule that an objection must be made in the trial court, we have not found it in our review of our case law." *Buckley*, 349 Ark. at 65–66, 76 S.W.3d at 833. We are not inclined to extend either the third or the fourth exception in *Wicks* to the facts at hand in this case.

We hold, however, that appellant is bound by her stipulation at trial that the child-victim was incompetent to testify. *See Pike v. Spradlin*, 2009 Ark. App. 392, 2009 WL 1362855 (holding that the Pikes were "bound by their stipulation and should not be heard on appeal to assert an argument that is contrary to it") (citing *Sec. Pac. Housing Servs. v. Friddle*, 315 Ark. 178, 866 S.W.2d 375 (1993); *Rooker v. City of Little Rock*, 234 Ark. 372, 352 S.W.2d 172 (1961)). Oral stipulations dictated in open court have the force and effect of a binding agreement. *See Bishop v. Bishop*, 60 Ark. App. 164, 961 S.W.2d 770 (1998); *Kunz v. Jarnigan*, 25 Ark. App. 221, 756 S.W.2d 913 (1988); *Linehan v. Linehan*, 8 Ark. App. 177, 649 S.W.2d 837 (1983); *see also Jenkins v. Jenkins*, 103 Ark. App. 21, 285 S.W.3d 704 (2008). While the parties are bound by the oral stipulations, a trial court is not bound by a stipulation entered into by the parties; rather, it is within the sound dis-

cretion of the court to approve, disapprove, or modify the agreement. *See Rutherford v. Rutherford,* 81 Ark. App. 122, 128–29, 98 S.W.3d 842, 845 (2003). There was no abuse of discretion in the court's acceptance of the parties' stipulation in this case.

Moreover, a defendant cannot claim error when he prays for alternative relief and the trial court grants one form of the requested relief. *Bradley v. State,* 2009 Ark. App. 714, 370 S.W.3d 263 (citing *Wyles v. State,* 357 Ark. 530, 182 S.W.3d 142 (2004)). This is so because, under the doctrine of invited error, one cannot be heard to complain of error for which he is responsible. *Id.* Finally, to the extent that appellant argues that she was prejudiced by the court's acceptance of the parties' stipulation, she has failed to demonstrate proof of such prejudice.

Based on the foregoing, we affirm on all points.

Affirmed.

PITTMAN and KINARD, JJ., agree.