2010 Ark. App. 491

**Kimberly Dione PACE, Appellant**

v.

**STATE of Arkansas, Appellee.**

**No. CA CR 09–1347.**

Court of Appeals of Arkansas.

June 16, 2010.

William R. Simpson, Jr., Chief Public Defender, Clint Miller, Deputy Public Defender, Little Rock, for appellant.

Dustin McDaniel, Atty. Gen., Christian Harris, Asst. Atty. Gen., Little Rock, for appellee.

ROBERT J. GLADWIN, Judge.

Appellant Kimberly Dione Pace appeals her conviction by the Pulaski County Circuit Court on a felony charge of theft of property with a value less than $2,500 but more than $500, for which she was fined $200, ordered to perform thirty hours of community service within six months, and sentenced to twenty-four months' probation. Her sole point on appeal is that the circuit court erred in admitting hearsay evidence to establish the value of the merchandise in this theft-of-property case. We affirm.

*Facts*

On January 1, 2009, the State filed a single-count felony information against appellant, alleging that on or about December 15, 2008, she committed Class C felony theft of property in violation of Arkansas Code Annotated section 5–36–103(a)(1), (b)(2)(A) (Supp.2007), by exercising unauthorized control over property having a value of less than $2,500 but more than $500 belonging to Dillard's Department Store. On that date, she was shopping in the men's department, and store employees suspected she was shoplifting men's neckties. They detained appellant as she attempted to leave the store, escorted her to the store security office, conducted a search, and discovered merchandise concealed behind the bags she was carrying. It is undisputed that appellant had not paid for the merchandise.

A bench trial was held on August 17, 2009. Michael Earl Miller, a Dillard's employee, testified regarding his observing and reporting of appellant stealing merchandise from the men's department. Albert Meyer, a manager in the men's department of Dillard's, testified regarding his direct contact with, and search of, appellant upon her attempted exit from the store and the resulting recovery of merchandise. Also testifying for the State was Andrea McShane, a security employee in the camera room at the store. Through her testimony, the State introduced a store-security videotape recording of the shoplifting incident. Sergeant Matt Lornas of the Pulaski County Sheriff's Office also testified regarding the investigation and arrest of appellant on the theft-of-property charge.

Edwin Carter, the manager of one-half of the men's department at the time of the incident, testified that he was notified by Mr. Meyer regarding an alleged shoplifter and that he assisted in the investigation. He explained that he followed store procedure by taking the stolen merchandise out of the bags and ringing them up on a register just like a regular sale to establish the aggregate value. He testified that the total value came to approximately $1,500 with tax.

At that time, appellant's counsel then objected to Mr. Carter's testimony as hearsay based upon *Brooks v. State,* 303 Ark. 188, 792 S.W.2d 617 (1990). He also asserted that, based on *Christian v. State,* 54 Ark. App. 191, 925 S.W.2d 428 (1996), the wholesale cost is what is at issue when

a determination of value is a question in a theft-of-property case. The circuit court initially overruled this objection. Mr. Carter then reviewed the submitted receipt and testified that he recognized it. He indicated the date and time of the receipt as well as the subtotal value of $1,472.95. The circuit court then allowed the receipt into evidence over appellant's hearsay objection based on the fact that Mr. Carter had not been shown to be the keeper of the records for Dillard's.

At the conclusion of the bench trial, the circuit court found appellant guilty and sentenced her as previously set forth. A judgment and commitment order was filed on August 20, 2009, and appellant filed a timely notice of appeal on September 14, 2009. This appeal followed.

*Standard of Review*

The decision to admit or exclude evidence is within the sound discretion of the circuit court, and we will not reverse a circuit court's decision regarding the admission of evidence absent a manifest abuse of discretion. *See Rodriguez v. State*, 372 Ark. 335, 276 S.W.3d 208 (2008). Specifically, we have stated that an appellate court will not reverse a circuit court's ruling on a hearsay question unless the appellant can demonstrate an abuse of discretion. *Rye v. State*, 2009 Ark. App. 839, 373 S.W.3d 354. An abuse of discretion is a high threshold that does not simply require error in the circuit court's decision, but requires that the circuit court acted improvidently, thoughtlessly, or without due consideration. *Id.*

*Applicable Law*

Arkansas Code Annotated section 5–36–103 covers theft of property and provides in relevant part:

(a) A person commits theft of property if he or she knowingly:

(1) Takes or exercises unauthorized control over or makes an unauthorized transfer of an interest in the property of another person with the purpose of depriving the owner of the property; or

. . . .

(b) Theft of property is a:

. . . .

(2) Class C felony if:

(A) The value of the property is less than two thousand five hundred dollars ($2,500) but more than five hundred dollars ($500)[.]

Ark.Code Ann. § 5–36–103(a)(1), (b)(2)(A).

"Value" is defined as the market value of a property or service at the time and place of the offense, or if the market value of the property cannot be ascertained, the cost of replacing the property within a reasonable time after the offense. Ark.Code Ann. § 5–36–101(12)(A)(i) (Supp. 2007). Value may be sufficiently established by circumstances that clearly show a value in excess of the statutory requirement, including through the testimony of a witness who actually knows the value of the property. *See Moss v. State*, 2010 Ark. App. 96, 2010 WL 374178. The preferred, although not exclusive, method of establishing value is by expert testimony. *See Russell v. State*, 367 Ark. 557, 242 S.W.3d 265 (2006).

*Discussion*

[3] Appellant initially notes that in the prosecution of a theft-of-property charge, the State has the burden of establishing the value of the property. *See Reed v. State*, 353 Ark. 22, 109 S.W.3d 665 (2003). In order to prove that appellant committed Class C felony theft of property, the State was required to prove that the property at issue had a fair market value of more than $500, but less than $2,500. Ark.Code Ann. § 5–36–103(b)(2)(A).

■ Appellant references the Arkansas Rule of Evidence 801(c) (2009) definition of hearsay—a statement made by an out-of-court declarant that is repeated in court by a witness that is offered to prove the truth of the matter asserted in the statement. Hearsay is generally inadmissible unless it fits within one of the exceptions set forth in Arkansas Rule of Evidence 803 (2009). Ark. R. Evid. 803. Appellant cites *Courtney v. State*, 252 Ark. 620, 480 S.W.2d 351 (1972), for the proposition that hearsay is inadmissible because the out-of-court declarant is not under oath at the time he makes the statement at issue and because the out-of-court declarant is usually not present at trial to be cross-examined.

Appellant cites two separate cases in which the testimony of witnesses who merely repeated the information recited on price tags attached to the property at issue was held to be hearsay. *See Brooks, supra; Doby v. State*, 28 Ark. App. 23, 770 S.W.2d 666 (1989). Additionally, appellant notes that price tags attached to merchandise are themselves considered hearsay when introduced into evidence to prove the fair market value of the evidence. *Brooks, supra.*

Appellant submits that the State never argued to the circuit court that either State's Exhibit No. 1 or Mr. Carter's testimony regarding the receipt were admissible as a business-record exception to the hearsay rule pursuant to Arkansas Rule of Evidence 803(6), and that the circuit court never made such a ruling. Even though appellant questioned the value of the merchandise before the circuit court, this particular argument was not developed, and appellant failed to obtain a specific ruling on the issue. *See Rodriguez, supra.* Accordingly, we will not address her argument that the circuit court failed to make a ruling as to whether there was a proper foundation for a business-records exception to the hearsay rule.

■ In the prosecution of a theft committed from a retail merchant, the State may prove the fair market value of the property at issue by presenting the testimony of a store employee who has personal knowledge of the fair market value of the property at issue. *See Moss, supra.* But in *Hinton v. Bryant*, 232 Ark. 688, 339 S.W.2d 621 (1960), our supreme court held that the testimony of a store employee repeating retail-price information found on a price tag was hearsay, while finding that an employee who, in the course of his employment, has read many price tags, or bar code equivalents, on merchandise has sufficient personal knowledge about the store's merchandise to be able to testify about the retail or wholesale price of the merchandise.

Appellant notes that, in the instant case, the State's sole witness with respect to the value of the stolen merchandise was Mr. Carter, a manager in the men's department of the store. Mr. Carter did not provide testimony that, based upon his employment as a manager of the store, he was familiar with the retail price of the store's merchandise. She claims that Mr. Carter's testimony, in essence, was a repetition of retail-price information found on the price tags and that State's Exhibit No. 1 was merely a compilation of price-tag quotations—both of which she contends should have been kept out of evidence as hearsay. She urges that the admission of the hearsay evidence was prejudicial to her because there was no other evidence offered by the State to prove that the merchandise had a fair market value sufficient to support the felony conviction.

Appellant contends that the exception advanced by the State requires proof by the proponent of the business record that the facts set forth in the record were

provided by someone with personal knowledge of the facts themselves, not the mere personal knowledge of how a retail merchant keeps track of retail prices of stolen merchandise recovered from shoplifters. She urges that Mr. Carter had, at most, personal knowledge of the procedure Dillard's. used upon the apprehension of a shoplifter. She claims that he never testified that he decided at what retail price the merchandise in his store would be sold or that he was familiar with Dillard's retail pricing policies or procedures. Appellant acknowledges that Mr. Carter's testimony was useful for explaining what Dillard's procedure is when detaining a ⌊₈shoplifter, but she maintains that his testimony on this point is not a substitute for personal knowledge-based testimony about how the retail prices of merchandise are determined.

▇ Acknowledging the general inadmissibility of hearsay, we note that a document is admissible under the business-records exception to the hearsay rule if it satisfies this seven-factor definition from Rule 803(6):

> (1) a record or other compilation, (2) of acts or events, (3) made at or near the time the act or event occurred, (4) by a person with knowledge, or from information transmitted by a person with knowledge, (5) kept in the course of regularly conducted business, (6) which has a regular practice of recording such information, (7) all as shown by the testimony of the custodian or other qualified witness.

*McClellan v. State*, 81 Ark. App. 361, 364, 101 S.W.3d 864, 866 (2003). This court has held that an employee whose regular duties include the accessing of prices through a store's register system is a qualified witness both to testify as to shoplifted merchandise's value and to lay a foundation for the admission of a receipt under the business-records exception. *Moss, supra* (allowing testimony of asset protection specialist that he calculated the value of shoplifted merchandise by scanning the bar code of items at a cash register, thereby accessing the prices from the store's inventory control system and creating a receipt for the total value of stolen items). *See also Watson v. State*, 2009 Ark. App. 745, 2009 WL 3762914 (holding testimony of employee, whose job duties included accessing price information through the business's computerized point-of-sale system, sufficient as to value of stolen items).

The testimony of Mr. Meyer, one of the managers of the men's department, indicated that he knew the recovered items were stolen because they did not bear "POP labels"—or ⌊₉electronic receipts that Dillard's regularly places on all merchandise that tracks the sale in case a customer loses the receipt. He explained that no merchandise is sold by Dillard's without being affixed with a POP label.

Additionally, with regard to the value of the stolen merchandise, Mr. Carter testified that he knew the value by following Dillard's standard practice of adding up the value of stolen merchandise by ringing it up on the store's register. That receipt was introduced, and it indicated that appellant stole sixteen ties, three items denoted "Better Glassware," and three items denoted "logo." The receipt bears an electronic date and time stamp, as well as other numeric information about the merchandise, including the "POP label" information from each item as explained by Mr. Meyer.

▇ We hold that Mr. Carter's testimony, in conjunction with the testimony of Mr. Meyer, was sufficient to lay the foundation for the introduction of the receipt under the business-records exception, as proof of the value of the stolen merchandise. Specifically, we hold that there is

sufficient evidence to indicate that he created the following:

(1) a record or other compilation—the sales-receipt tape;

(2) of acts or events—the determination of the price of the stolen merchandise;

(3) made at or near the time the act occurred—just after appellant was apprehended and the merchandise recovered from her shopping bags;

(4) by a person with knowledge—Mr. Carter, who testified as to the standard practice of the store using the cash register to determine the value of the items and the recordation of that information via the creation of a register receipt;

(5) kept in the course of a regularly conducted business activity—the determination of the value of a selection of store merchandise, whether for the purpose of sale or recovery of shoplifted items;

(6) which has a regular practice of recording such information—established by Mr. Carter's unequivocal testimony of "that's what we do" when asked about the procedure;

(7) as shown by the testimony of the custodian or otherwise qualified witness—Mr. Carter, a department manager, established that store managers were employees authorized to use the process for determining the value of stolen merchandise and the procedures regularly utilized. *See Brooks v. State*, 303 Ark. 188, 792 S.W.2d 617 (1990).

We find no merit in appellant's attempt to qualify an employee's testimony regarding the value of merchandise based upon a certain number of price tags that the employee must read before qualifying to testify on the issue. It is not the number of price tags an employee has seen that matters in a case where the alleged error is the admission of hearsay evidence, but rather whether the employee's testimony provides an adequate foundation to satisfy an exception to the hearsay rule such as the business-records exception. If it does, then the law regards the employee's testimony as sufficiently trustworthy to be admitted into evidence.

Distinguishing the instant case from *Brooks, supra,* we agree that Mr. Carter was not the equivalent of a security guard simply reading numbers from a price tag. He testified regarding his responsibilities as a floor manager regarding the procedures followed with respect to shoplifters. Moreover, he explained more than simply repeating a number printed on a price tag, as the assistant manager did in *Doby.* Mr. Carter testified as to the standard operating procedure used by Dillard's to calculate the value of a group of items, including the accessing of an electronic register to create a receipt.

We note that the State acknowledges that neither the register system nor Mr. Carter's training with respect to the system were described in detail during the trial, and agree that additional testimony regarding these issues would certainly have strengthened the State's case. Our supreme court has held that circuit courts are not required to abandon common sense when sitting as fact-finder, *see Tarentino v. State*, 302 Ark. 55, 786 S.W.2d 584 (1990), and we agree with the contention that the circuit court in this case was entitled to make an inference that the Dillard's electronic-register system was more similar to Wal–Mart's computerized system in *Moss* or computerized point-of-sale system in *Watson* than the mere physical price tags in *Brooks* and *Doby.* There was testimony indicating that the registers across the store are integrated, enabling a customer to pay for merchandise from any register in the store. Also, evidence indicates that each item listed on the admitted register receipt created by

Mr. Carter bears the electronic POP label described by Mr. Meyer as an electronic means of tracking and identifying merchandise sold. The fact that Dillard's uses the same process of inputting merchandise information and creating a register receipt whether it is for a sale or in a shoplifting incident is further indicia that the receipt was a trustworthy source of information regarding the value of the merchandise. Accordingly, we hold that the circuit court did not abuse its discretion by considering Mr. Carter's testimony and ruling that there was a sufficient foundation for his testimony and the register receipt regarding the value of the stolen merchandise.

Affirmed.

GLOVER, J., agrees.

PITTMAN, J., concurs.