Cite as 2025 Ark. App. 192

# ARKANSAS COURT OF APPEALS

DIVISION I
**No.** CR–24–384

| | |
|---|---|
| | **Opinion Delivered** April 2, 2025 |
| TIFFANY DAWN ROGERS<br>APPELLANT | APPEAL FROM THE ASHLEY COUNTY CIRCUIT COURT [NO. 02CR-23-140] |
| V. | |
| STATE OF ARKANSAS<br>APPELLEE | HONORABLE ROBERT B. GIBSON III, JUDGE |
| | AFFIRMED; REMANDED TO CORRECT SENTENCING ORDER |

## BRANDON J. HARRISON, Judge

Tiffany Dawn Rogers appeals her conviction for Class C theft of property and court-ordered restitution in the amount of $10,000. She argues that there was insufficient evidence to convict her of a Class C felony and that the circuit court erred in determining the amount of restitution. We affirm her conviction and the restitution amount but remand for correction of the sentencing order.

In August 2023, the State charged Rogers with residential burglary (Class B felony), breaking or entering (Class D felony), and theft of property (Class C felony). At a pretrial hearing on 26 February 2024, it was agreed that Rogers would plead guilty to residential burglary and breaking or entering. The court would hold a bench trial to determine whether the theft-of-property charge would be Classified as a Class C felony or a Class D felony and to determine the amount of restitution to be paid.

The circuit court convened the bench trial on 13 March 2024. The State's evidence

consisted of the following.  Josh Pollock, an investigator with the Ashley County Sheriff's Department, investigated a theft and break-in at a residence and shop belonging to Chad Hudson.  As part of that inquiry, Pollock spoke to Rogers, who stated that someone had shown her the residence and told her it was a deer camp.  She believed that it was abandoned and that she could take whatever she wanted.  Rogers told Pollock that she sold a large air compressor from the property to David Hamm and arranged to sell a set of jet skis to him as well.  She also pawned multiple tools, including a Sawzall reciprocating saw, chop saws, and a "JOBOX" full of tools.  She did not dispute that she had taken things from the residence and the shop and admitted working with others to take items off the property.  She also admitted stealing silverware from the house.

On cross-examination, Pollock agreed that some items that were listed as missing were later recovered at Hamm's house, including the air compressor, the two jet skis, and a cutting torch.  Pollock explained that the police had text messages between Rogers and Hamm in which she told him how much she wanted for the jet skis and the air compressor and where to pick them up.  Rogers told Pollock that she could not remember everything that she had taken from the shop, but she had "taken lots of stuff."  Pollock later stated, "Everything that we found was associated with Ms. Rogers, you know, all the tools that Mr. Hamm had."  Pollock also said that Rogers had admitted taking and selling the items that had been pawned.

Tommy Sturgeon, the Ashley County sheriff, testified that he knows the homeowner, Chad Hudson, and is familiar with the shop on his property.  Sturgeon said it is a large shop that was full of industrial tools, such as a welding machine, a chain hoist, and

2

"every kind of cutting tool." He said that Hudson's father had been a fabricator and welder and that Hudson is also a fabricator and welder. The shop had been full—"wall to wall"—but after the theft, there was "nothing there."

Chad Hudson testified that he has a large shop on his property and verified that Sturgeon's description of the shop was accurate. He explained that he was on the road for work when the theft occurred, but he had received a phone call from someone in his church family who had spoken to Hamm, who said, "Well, tell Mr. Chad I've got a lot of his stuff." Hudson identified the restitution form that he had filled out for the prosecution, which listed numerous items that had been taken from his shop, including a ratchet set; a thousand-pound puller; a jigsaw; a seventy-two-inch industrial-finish mower; and a Lincoln 250 welding machine. He explained that he had looked online to estimate the value of the items. The total value for the items that had not been recovered was $40,083.87. Hudson estimated that there had been at least $8000 to $10,000 worth of tools in the toolbox that was pawned.

On cross-examination, Hudson clarified that the items on the restitution form were items that had not been recovered and that he did not include items that had been pawned because police were already aware of those items. The court expressed its understanding that Hudson had "made a list of items that he was—did not believe had been documented as stolen or logged in at a pawn shop, and so it was a—it was not an all-inclusive list. It was really a supplemental list."

After the State rested, the defense argued, "[T]the only figure that we've been given is that there were $40,000 worth of items, Your Honor, and we dispute that." Defense

counsel acknowledged that Rogers was responsible for the theft of the air compressor, but he did not know the value of the air compressor. Counsel asserted that Rogers was guilty of "no more than a D felony on the theft."

Rogers testified and did not dispute that she was responsible for the theft of some items from Hudson's property. She admitted going into his house once, and while she disagreed that she went into the house to take things that did not belong to her, she did take some silverware. She sold an air compressor to Hamm for $80, and she also removed a toolbox from the shop and pawned it for $30 or $40. She denied responsibility for the theft of any other items and assumed that Hamm had taken the other items from the shop. On cross-examination, she claimed that the toolbox did not have any tools in it when she pawned it. When examined by the court, Rogers explained that other items she had pawned belonged to either her or her son. She had also pawned items recovered from some abandoned mobile homes on property recently purchased by her daughter and son-in-law.

Jonathan Tanksley, Rogers's son-in-law, confirmed that there had been a TV and some tools on the property, which Rogers had pawned. Specifically, he said there was a Sawzall and some Milwaukee tools on the property, but he was not familiar with a chop saw or a Porter-Cable grinder.

Pollock was recalled to the stand and said that there had been tools in the toolbox that had been pawned. According to Pollock, the pawn broker had paid $150 for the tools in the toolbox and sold them for around $1000.

At the close of testimony, the defense renewed its argument that the State had not proved that Rogers was responsible for the theft of over $5000 worth of property. The

4

defense acknowledged the $40,000 estimate but asserted that there was no proof that Rogers had taken the bulk of the items from the shop. Counsel also asserted that any restitution ordered should be less than $5000.

The court found that Rogers had committed a Class C felony, meaning that the value of the property taken was less than $25,000 but more than $5000. Ark. Code Ann. § 5-36-103(b)(2)(A) (Repl. 2024). The court based its decision on Rogers's lack of credibility and said, "I can't give the benefit of the doubt to an admitted thief. . . . I don't buy that she did not orchestrate the sale or the fairing [sic] away of other items." The court also explained that the tools in Hudson's shop were large and expensive, and "the number 5,000 is easy to reach real quickly." The court set restitution at $10,000 payable at a rate of $85 a month. The court also sentenced Rogers to an aggregate term of six years' imprisonment and ten years' suspended imposition of sentence.[1] Rogers timely appealed the circuit court's order.

## I. *Sufficiency*

A person commits theft of property if he knowingly takes or exercises unauthorized control over the property of another person with the purpose of depriving the owner of the property. Ark. Code Ann. § 5-36-103(a)(l). When the sufficiency of the evidence is challenged on appeal from a criminal conviction, we consider only that proof that supports the conviction and view that evidence and all reasonable inferences deducible therefrom in

---

[1] At the hearing, the court and the parties agreed, "The sentencing order will read that it was a negotiated plea of residential burglary, and breaking and entering, but it was a bench trial as to theft of property and the amount of restitution." However, the sentencing order shows both that Rogers pled guilty directly to the court and that she was found guilty by the court and sentenced by the court on the theft-of-property conviction. We remand for correction of the sentencing order to reflect that she was found guilty by the court and sentenced by the court on the theft-of-property conviction.

5

the light most favorable to the State. *Davis v. State*, 2015 Ark. App. 234. We will affirm if the finding of guilt is supported by substantial evidence. *Id.* Substantial evidence is evidence of sufficient force and character to compel a conclusion one way or the other without resorting to speculation or conjecture. *Hicks v. State*, 2012 Ark. App. 667. Credibility of witnesses is also an issue for the fact-finder, who is free to believe all or part of any witness's testimony and resolves questions of conflicting testimony and inconsistent evidence. *Roberts v. State*, 2022 Ark. App. 149, 643 S.W.3d 843.

Rogers argues that the value of the property she was responsible for taking was less than $5000, so she should have been convicted of a Class D felony. In the prosecution of a theft-of-property charge, the State has the burden of establishing the value of the property. *Howard v. State*, 2011 Ark. App. 573, 386 S.W.3d 106. Value is defined as the market value of a property or service at the time and place of the offense. Ark. Code Ann. § 5-36-101(23)(A)(i) (Repl. 2024); *Howard*, *supra.* Value may be sufficiently established by circumstances that clearly show a value in excess of the statutory requirement, including through the testimony of a witness who actually knows the value of the property. *Howard*, *supra*; *Moss v. State*, 2010 Ark. App. 96.

Here, Rogers concedes that the State's witnesses may have established that multiple items valued at approximately $40,000 had been taken, but she says there was insufficient evidence to connect the theft of those items to her. She admitted that she stole silverware and a toolbox and that she coordinated the sale of the air compressor to Hamm, but she denied taking any other items.

The State counters that it proved she stole at least $10,000 worth of property. The

air compressor was sold by Rogers to Hamm, and the restitution form completed by Hudson showed the toolbox to have a value of $1,323.99. While Rogers testified that the toolbox was empty when she took it, Pollock testified that the pawn broker paid $150 for the tools inside and sold them for $1000. According to Hudson, the tools in the toolbox had a value of "at least eight, $10,000." So there was substantial evidence that the value of those tools alone was sufficient to satisfy the $5000 threshold to convict for a Class C felony.

The State also contends that it presented evidence that Rogers was responsible for stealing more than just an air compressor, toolbox, and silverware. For example, the police recovered Hudson's cutting torch and two jet skis from Hamm's property, and text messages between Rogers and Hamm indicated she told him where to pick up the jet skis and how much she wanted for them. There is no evidence of the value of the jet skis, but the cutting torch was valued at $6,188.82. In addition, Rogers admitted to Pollock that she had taken the items that were pawned, which, according to testimony, included a Sawzall, a chop saw, and a table grinder. While Rogers testified at trial that these items came from her son-in-law's property, he was unable to confirm that either the chop saw or the table grinder had been on his property. The State concludes that given the aggregate value of the stolen property, the circuit did not resort to speculation or conjecture to determine that Rogers had stolen at least $5000 worth of property.

Rogers's argument is based on the premise that the value of the property used to determine felony Classification in Ark. Code Ann. § 5-36-103(b) is limited to the property she admitted stealing—the silverware, air compressor, and toolbox. But this argument overlooks the evidence that she was also involved in the sale of other items, such as the jet

7

skis and a big-time cutting torch. And the circuit court did not believe the testimony of her limited involvement in the theft of Hudson's property, and credibility is squarely within the province of the fact-finder. *Roberts, supra.* The circuit court expressed its familiarity with the tools and equipment needed for fabrication and welding work and the general cost of those items and found that "the number 5,000 is easy to reach real quickly." Circuit courts are not required to abandon common sense and experience when sitting as fact-finder. *See Russell v. State*, 2011 Ark. App. 698 (fact-finder is entitled to draw upon common sense and experience in reaching its verdict); *Pace v. State*, 2010 Ark. App. 491, 375 S.W.3d 751 (circuit court was entitled to infer that a store's electronic-register system was more similar to a computerized system than mere physical price tags). We affirm the circuit court's finding that Rogers committed a Class C felony.

## II. *Restitution*

The purpose of restitution is to make the victim whole with respect to the financial injury suffered. Ark. Code Ann. § 16-90-301 (Repl. 2016). The sentencing authority is required to determine the amount of actual economic loss caused to a victim by the offense. Ark. Code Ann. § 5-4-205(b)(4)(A) (Repl. 2024). On appeal, it is our job to determine whether the amount of restitution is supported by substantial evidence. *Jester v. State*, 367 Ark. 249, 239 S.W.3d 484 (2006). Substantial evidence is evidence of sufficient force and character that it will, with reasonable certainty, compel a conclusion without resorting to speculation or conjecture. *Hicks, supra.*

Rogers reiterates that she was not connected to any stolen items other than the air compressor, the toolbox, and the silverware. The restitution form introduced by the State

8

listed items that totaled $40,083.87, but she claims that the only thing on the list connected to her was the toolbox valued at $1323. There was no evidence of the cost of the air compressor or the silverware. She also notes that the State failed to introduce the text messages between her and Hamm and the receipts from the pawn shop showing that she had pawned items.

The State responds that the evidence was more than sufficient to establish that Hudson suffered an actual economic loss of at least $10,000. Even if the recovered items are set aside, Hudson's testimony and the list he compiled on the restitution form establish that he suffered an economic loss well in excess of $10,000.

The circuit court not only found Rogers uncredible, but it also specifically found Hudson credible as to the items missing from his shop. Again, disputed facts and credibility determinations are within the province of the fact-finder. *Roberts*, *supra*. According to Hudson, the list of items from his shop that had not been recovered had a value of approximately $40,000. Considering the evidence of Rogers's involvement in stealing certain items and the circuit court's disbelief that her involvement was limited to those items, we hold that there is substantial evidence to support a restitution amount of $10,000.

Affirmed; remanded to correct sentencing order.

GLADWIN and HIXSON, JJ., agree.

*Vicki Lucas*, for appellant.

*Tim Griffin*, Att'y Gen., by: *James Hill*, Ass't Att'y Gen., for appellee.